UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| NICHOLAS JAMES KOUBAITARY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-169 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| PARKER-HANNIFIN HYDRAULIC | ) | |
| SYSTEMS DIVISION, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a civil action alleging employment discrimination under Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act. Plaintiff's claims, as asserted in the charge of discrimination filed with the Michigan Department of Civil Rights, arise from the decision of defendant, Parker-Hannifin Hydraulic Systems Division, to deny plaintiff a promotion in June 2006. Plaintiff alleges that the decision was motivated by retaliatory animus stemming from plaintiff's previous lawsuit against defendant asserting discrimination on account of his national origin. Plaintiff also asserts that defendant's decision not to promote plaintiff was motivated by a disability. After receiving a right-to-sue letter from the EEOC, plaintiff initiated this action by filing a complaint *in pro per* on February 21, 2007.

After the close of discovery, defendant filed a motion for summary judgment, supported by the deposition of plaintiff and fifteen exhibits authenticated at the deposition. (docket # 28). Plaintiff has filed a timely response in opposition to the motion, supported by numerous

exhibits, some of which overlap those presented by defendant.  By order of reference entered March 7, 2007, Chief Judge Robert Holmes Bell referred this matter to me for all pretrial purposes, including the submission of a report and recommendation on dispositive motions.  28 U.S.C. § 636(b)(1)(B).  On August 10, 2007, the case was transferred to District Judge Janet T. Neff for all further proceedings, but the order of transfer continued the preexisting referral to me for all pretrial purposes.  Having reviewed the record and the submissions of the parties, I conclude that defendant is entitled to summary judgment on all claims properly before the court.

## Applicable Standard

As the Sixth Circuit has noted, the federal courts have entered a "new era" in summary judgment practice.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1478-81 (6th Cir. 1989).  While preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial.  Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Tatis v. U.S. Bancorp*, 473 F.3d 672, 675 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *See Lockett v. Suardini*, 526 F.3d 866, 872 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 251-52); *see also Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 628-29 (6th Cir. 2008).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627 (6th Cir. 2008). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Once defendant shows that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008); *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). To sustain this burden, plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007); *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006); *see Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008) ("To survive summary judgment, the non-movant must provide evidence beyond the pleadings setting out specific facts showing a genuine issue for trial.").

## **Proposed Findings of Fact**

The following facts are established beyond genuine issue, principally by plaintiff's deposition and the exhibits authenticated at that deposition, which are found in the record as attachments to defendant's motion for summary judgment. (docket # 28). I have also relied on the exhibits submitted by plaintiff. (docket # 31). Plaintiff has not submitted any affidavit or deposition.

-3-

The following facts are established by the record beyond genuine issue:

1.      Plaintiff is a resident of Lawrence, Michigan.  He was born in Syria but is a naturalized citizen of the United States.  Plaintiff was first employed by defendant on July 27, 1981, and has been continuously employed (except as noted below) to the date of this report and recommendation.  (Pl. Dep. 6, 13).  Defendant, Parker-Hannifin Hydraulic Systems Division, a division of Parker Hannifin Corporation, maintains a manufacturing plant in Kalamazoo, Michigan, principally devoted to the machining, assembling, and testing of hydraulic pumps for aircraft.

2.      Plaintiff began his career with defendant in 1981 in a manufacturing position, in which he hand-finished valves.  (Pl. Dep. 13-14).  After finishing his probationary period, he became a member of UAW Local 1666, which at all relevant times had a collective bargaining agreement with defendant covering its production workers.  Plaintiff held a number of leadership positions with the union, including union steward and vice-president and chairman of the bargaining committee.  He was elected president of the union in 1996.  Plaintiff lost his bid for reelection to the president's position in 1999. (Pl. Dep. 14-15).  In his various union positions, plaintiff was involved in collective bargaining, processing grievances, and interpreting the collective bargaining agreement. (Pl. Dep. 17-18).

3.      Plaintiff's exhibits disclose that after he lost the union election, plaintiff experienced friction with the new union regime.  (*See, e.g.,* Pl. Ex. D, document marked "PHC 1161").  Workplace stress ultimately caused plaintiff to seek help at Borgess Medical Center for depression, anxiety, and anger; he was hospitalized for mental problems for one week.  On July 3, 2002, a supervisor received a phone call from Borgess Medical Center reporting that a patient had made a threat that he might kill someone in his workplace.  Brent Butler, the HR team leader, called

plaintiff on July 3, 2002, and plaintiff allegedly confirmed that he had made such a threat. On July 10, 2002, defendant issued a letter charging plaintiff with a violation of the "zero tolerance policy" concerning threatening behavior in the workplace. (Pl. Ex. 19). Plaintiff was discharged from employment on September 9, 2002, for this alleged rule infraction. (Plf. Dep. 16). At the time of his discharge, plaintiff's position was "maintenance-machine." (Plf. Dep. 23)

      4.    On September 12, 2002, plaintiff filed a grievance under the collective bargaining agreement, alleging that his discharge from employment violated the "just cause" provision of the collective bargaining agreement.

      5.    On May 9, 2003, plaintiff initiated a civil action in this court challenging his discharge from employment. *Koubaitary v. Parker-Hannifin Corporation and UAW*, case no. 4:03-cv-72 (Enslen, J.). The complaint, filed by retained counsel, was brought under the court's diversity jurisdiction and alleged only state-law claims. Count 1 asserted ethnic harassment in violation of the Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS §§ 37.2201, *et seq.* Count 2 alleged that plaintiff's discharge was in retaliation for his report of ethnic intimidation to the Federal Bureau of Investigation, again in violation of the state Elliott-Larsen Civil Rights Act. Count 3 alleged the tort of intentional infliction of emotional distress.

      6.    Plaintiff's grievance made its way through the dispute resolution process under the collective bargaining agreement. Ultimately, the matter was referred to Donald F. Sugerman for binding arbitration. By award dated January 8, 2004, arbitrator Sugerman found that plaintiff's statements, although uttered, could not reasonably be deemed as threats in violation of company policy, "but rather an acknowledgment to his treating professionals of a need for help." (Arbitration Award, Def. Ex. 1 at 21). The arbitrator found that plaintiff had been discharged

without just cause and ordered that defendant immediately reinstate plaintiff to his former position and that he be made whole for any loss of earnings and benefits he had sustained. (*Id.* at 25). Plaintiff returned to work on January 30, 2004, at the same position he held before his discharge. (Plf. Dep. 16, 23).

7.    In October 2004, plaintiff bid for a position titled "CSO Storekeeper." Plaintiff wished to leave the maintenance department because of perceived harassment by his team leader and because plaintiff believed that he was being "set up" for termination. (Plf. Dep. 26-28). Defendant granted plaintiff's bid for a transfer and awarded him the CSO storekeeper position as of November 1, 2004. (*Id.*, 34, 38-39).

8.    After the arbitrator awarded plaintiff relief on his grievance, the parties continued to litigate the Elliott-Larsen civil rights action in this court. Plaintiff and his counsel met in a protracted settlement conference before Magistrate Judge Ellen Carmody, which resulted in a settlement of the case. The settlement terms, which were placed on the record, involved both monetary and non-monetary terms and the exchange of broad mutual releases. Judge Richard Enslen entered an order of dismissal of the case with prejudice on April 22, 2005, pursuant to the stipulation of the parties reached during the settlement.

9.    Plaintiff went on medical leave on June 12, 2006. The leave was necessitated by plaintiff's carpal tunnel condition, which was allegedly work-related. (Plf. Dep. 34-36). Plaintiff was placed on worker's compensation status and underwent carpal tunnel surgery the same week.

10.    Plaintiff received a telephone call from someone at Parker-Hannifin, informing him that Sally Perrin (defendant's Environmental Health & Safety Coordinator) had established plaintiff's return to work date as Monday, June 19, 2006. (Plf. Dep. 71). Plaintiff

immediately sent an e-mail to Gerry Simkins, protesting the return-to-work date.  The e-mail, in its entirety, read as follows:

> Hi Jerry:
>
> This e.mail is intended to clarify Sally's confusion concerning my medical situation and to eliminate any complications in arriving at my return to work date.  The time I need to fully recover use of my hand is totally at the determination of my surgeon and not Sally, who, the last I was aware, is not even a nurse let alone a physician to be able to make that call.  I had a triple procedure on my right hand.  Two of them were performed to release the ring finger and the thumb.  The third procedure was to relieve the pinched nerve (Carpal tunnel).  After the surgery, the doctor did not issue any back to work release orders!  I have an appointment on Monday, June 19, 2006, in the afternoon to be assessed for therapy.  I will keep you apprised of the situation. I am hoping this e.mail will clarify any confusion or misunderstanding about my medical condition by any personnel at PARKER S.H.D!
>
> Sincerely,
> Nick Koubaitary

(Def. Ex. 6; Plf. Dep. 71).  The clear tenor of plaintiff's e-mail was that he was protesting being forced to return to work prematurely.

11.     On June 19, 2006, plaintiff's doctor (James Smith, M.D.) sent defendant a note (Def. Ex. 7) indicating that plaintiff would be "off work until further notice."  The doctor's note was sent by facsimile and was received by defendant at about noon on June 19, 2006.

12.     Two days later, on June 21, 2006, Ms. Perrin sent Dr. Smith a facsimile note asking the doctor for "a date of return-to-work or at least a date when he [plaintiff] will be seen again."  (Def. Ex. 8).

13.     On June 22, 2006, Dr. Smith sent defendant a facsimile, indicating that plaintiff's "next appointment" with occupational therapy was scheduled for July 6, 2006.  (Def. Ex.

9). Plaintiff testified that he expected Dr. Smith to give him a return-to-work date at the July 6, 2006 appointment. (Plf. Dep. 45).

   14. On June 26, 2006, while plaintiff was still on worker's compensation leave, defendant posted an opening for "order detailer - CSO." (*See* Hourly Job Posting dated 6/26/06, Def. Ex. 11). The position would only be open for two days and would be awarded on June 28, 2006. On June 26, plaintiff submitted a written bid card for the order detailer position. (Def. Ex. 10) (top half)). On the face of the bid card, plaintiff wrote, "You will be receiving back to work release documentation via mail."

   15. On the day the bidding process closed for the order detailer position, plaintiff's doctor had not yet provided defendant with a date for plaintiff's return to work. Defendant awarded the position to Michael L. Meyers, who had bid on the job on June 26, 2006. (Def. Ex. 10 (bottom half)). Mr. Meyers had approximately two years' greater seniority than plaintiff. (*Id.*; *see* Plf. Dep. 49).

   16. After defendant awarded the position to Michael Meyers, Pam Brady (defendant's Senior Human Resources Representative) called plaintiff at home to inform him that he had been ineligible to bid on the CSO order detailer job because he was on leave of absence. Al Jackson, vice-president of Local Union 1666, participated in the phone call. Brady relied upon the following provision of the collective bargaining agreement.

> Employees on extended leaves of absence (leaves expected to exceed 30 calendar days) without a documented return-to-work date of within 10 workdays of when the job posting comes down, are ineligible to bid.

(Art. VI, § 10(e) of Collective Bargaining Agreement, Def. Ex. 12 at p. 34; *see* Plf. Dep. 49-56).

17. As noted, on the day that bidding closed (June 28, 2006), plaintiff had not yet provided a documented return-to-work date from his doctor. (Plf. Dep. 57). Dr. Smith first provided to defendant a return-to-work date by facsimile note sent June 30, 2006. (Def. Ex. 13). In this note, Dr. Smith indicated that plaintiff could return to work on July 10, 2006. (Plf. Dep. 59-60).

18. Plaintiff believed that the company had misinterpreted article VI, § 10(e) of the collective bargaining agreement and that he should have been eligible to bid on the order detailer job. Nevertheless, plaintiff did not file a grievance challenging the company's decision.

19. On September 15, 2006, plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights. (Def. Ex. 14). The administrative charge alleged that plaintiff had been subjected to discrimination because of a record of disability and in retaliation for his filing of a previous lawsuit against his employer, in violation of Title VII of the Civil Rights Act and the Americans With Disabilities Act. The boxes for "retaliation" and "disability" were checked, but not the box for "national origin." The administrative charge indicated that the discrimination began and ended on June 30, 2006, and challenged only the defendant's decision to deny plaintiff's bid for the CSO order detailer position. The administrative process was never completed, however, because plaintiff asked for the issuance of a right-to-sue letter approximately sixty days after filing the administrative charge. (Plf. Dep. 74-75). The EEOC issued its right-to-sue letter (attached to the complaint) on November 26, 2006.

20. Plaintiff filed the instant civil action on February 21, 2007. He used the form complaint provided by the Clerk to *pro se* litigants for possible use in Title VII cases. The form complaint alleges only a violation of Title VII of the Civil Rights Act of 1964 and attaches as an exhibit the right-to-sue letter issued by the EEOC. On March 4, 2007, plaintiff filed an amendment

-9-

to his complaint (docket # 6) alleging a violation of plaintiff's rights under Title I of the Americans
With Disabilities Act of 1990 arising from defendant's decision to deny plaintiff "the eligibility to
bid during his short Workman's Compensation Disability leave in June 2006."

   21. Plaintiff remains employed by defendant as a CSO storekeeper.  He testified
that he has no physical limitations that impede his ability to perform his present job.  (Plf. Dep. 75-
76).  Plaintiff's job performance has not been criticized, and he gets along well with his present
supervisor.  (*Id.* 76).

**Discussion**

## I. Scope of Title VII Case

   In his response to defendant's motion for summary judgment, plaintiff makes a
number of allegations irrelevant to the scope of this case.  For example, plaintiff attaches numerous
old grievances brought under the collective bargaining agreement in which he or other employees
challenged the company's interpretation of the collective bargaining agreement.  Plaintiff also
complains about alleged violations of the company's code of ethics by various employees and
complains of constant "harassment" and slander by supervisors.  Defendant rightly objects to the
diffuse nature of plaintiff's presentation.

   As a statutory prerequisite to the ability to bring suit under Title VII, a claimant must
file a timely administrative charge with the EEOC or analogous state agency and receive a right-to-
sue letter at the conclusion of the administrative proceedings.  *See McDonnell-Douglas Corp. v.
Green*, 411 U.S. 792, 798 (1973).  It is well established that a district court's jurisdiction in Title VII
cases is limited to the scope of the administrative charge and of the EEOC investigation reasonably

-10-

expected to grow out of the charge of discrimination. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). The court must give a broad reading to administrative charges made by non-attorneys, but it is not allowed to fabricate claims that do not fairly appear on the face of the administrative charge. *See Duggins v. Steak 'N Shake*, 195 F.3d 828, 832 (6th Cir. 1999).

The charge filed by plaintiff with the EEOC challenged only defendant's decision not to award plaintiff the CSO order detailer's position. The date of the discrimination was specifically limited to June 30, 2006. The appropriate scope of this Title VII case, therefore, is limited to that act of the employer, as well as other claims "reasonably expected to grow out of the charge of discrimination." Claims of breach of the collective bargaining agreement, of harassment and acts of slander unrelated to the failure to promote, and allegedly bad employment references given months later were neither comprehended in the administrative charge nor were likely to be included in the EEO investigation. Unfortunately, because plaintiff pretermitted the EEOC's administrative process, this court is forced to guess at the likely scope of the EEOC's investigation and conciliation efforts. Nevertheless, it is not likely that the agency would have entertained general and diffuse claims of harassment remote in time from the events of June 2006. The scope of this Title VII case must therefore be limited to the decision denying plaintiff the CSO order detailer position.

Defendant, however, seeks to hold plaintiff strictly to those grounds of discrimination enumerated in the administrative charge. It is unlikely that the Sixth Circuit would read the administrative charge so restrictively. The Court of Appeals has remarked that the exhaustion requirement of Title VII "is not meant to be overly rigid." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). Application of the exhaustion requirement should not result in the restriction of complaints based on "procedural technicalities" or where the charge does not

-11-

contain "the exact wording which might be required in a judicial pleading." *Id.* (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)).  As a result, the administrative charge should be "liberally construed" to encompass all claims reasonably expected to grow out of the charge of discrimination.  *Id.*  Contrary to defendant's argument, a claimant's failure to check a particular box on the administrative charge form does not, in and of itself, preclude consideration of the unasserted claim.  *See, e.g., Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527-38 (6th Cir. 2005).  A plaintiff would be allowed to litigate his claim of discrimination on the basis of national origin, even though that particular "box" was not checked on the administrative charge form, as long as it was reasonably foreseeable that the EEOC's investigation would have included this issue.  *Id.* Plaintiff alleges retaliation arising from his previous federal lawsuit, which had asserted a claim of national origin discrimination.  The issue of national origin was therefore clearly a part of the case, and the EEOC reasonably would have pursued a charge of national origin discrimination.  The Sixth Circuit routinely allows suit on uncharged claims, as long as the facts surrounding the charged claim would prompt the EEOC to investigate further.  *See, e.g., Wiegel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380-81 (6th Cir. 2002).

For the foregoing reasons, I conclude that the present lawsuit is limited to a challenge to defendant's decision not to grant plaintiff the CSO order detailer job in June 2006, but that plaintiff may pursue a Title VII claim on the basis of both retaliation and national origin discrimination, as well as a claim under the ADA.

-12-

II.      **Title VII Claims**

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin.   42 U.S.C. § 2000e-2(a).   Claims of intentional discrimination may be established either by proffering direct evidence of discrimination, or relying on circumstantial evidence to create an inference of discrimination.   *See Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 501 (6th Cir. 2007).   Plaintiff has proffered no direct evidence of discrimination and admits that he has none.   (Plf. Dep. 77).   Thus, plaintiff is required to establish a *prima facie* case of discrimination under the framework established and refined in a trilogy of Supreme Court cases:   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).   "Under these cases Title VII cases require three stages of proof.   First, the plaintiff must prove a *prima facie* case of discrimination.   If the plaintiff establishes [his] *prima facie* case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employer's action.   If the defendant carries this burden, the plaintiff must prove that the proffered reasons were pretextual."   *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1997) (citations omitted); *see Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719-20 (6th Cir. 2006).   "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."   *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 721 (6th Cir. 2004).   The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.   *See Hicks*, 509 U.S. at 507, 508, 511; *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Anthony v. BTR Auto Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir.

-13-

2003).  This sequential analysis applies both to plaintiff's claim of retaliation and to his claim of discrimination on account of national origin.

     A.    <u>Retaliation</u>

     Plaintiff's administrative charge alleged that he was denied the ability to bid on the CSO order detailer position "in retaliation for filing a lawsuit against my employer, in violation of Title VII of the Civil Rights Act of 1964."  (Charge of Discrimination, Def. Ex. 14).  The previous lawsuit referred to in the charge of discrimination was *Koubaitary v. Parker Hannifin*, case no. 4:03-cv-72, filed before Judge Enslen of this court on May 9, 2003.

     Section 704(a) of Title VII prohibits retaliation by an employer for the exercise of certain protected rights:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, *or participated in any manner in an investigation, proceeding, or hearing under this subchapter*.

42 U.S.C. § 2000e-3(a) (emphasis added).  Section 704(a) prohibits two specific types of retaliation by an employer.  First, the "Opposition Clause" prohibits an employer from discriminating against an employee who has opposed any practice made unlawful by Title VII.  The "Participation Clause" prohibits discrimination against an employee who has made a charge, testified, or otherwise participated" in any proceeding under Title VII.  *See generally Butts v. McCullough*, 237 F. App'x 1, 5 (6th Cir. 2007); *Johnson v. University of Cincinnati*, 215 F.3d 561, 579-82 (6th Cir. 2000).  Plaintiff's claim in the present case is brought under the Participation Clause, as he alleges that defendant denied him a promotion in 2006 in retaliation for plaintiff's filing a lawsuit in 2003.

In the absence of direct evidence of retaliation, which does not exist in the present case, plaintiff must establish a *prima facie* case of unlawful retaliation.  To establish a *prima facie* case of unlawful retaliation under Title VII, the plaintiff must demonstrate by a preponderance of the evidence that

> (1) he engaged in activity that Title VII protects; (2) defendant knew that he engaged in this protected activity; (3) defendant subsequently took an employment action adverse to the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action exists.

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008); *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003).  Upon examination of the record, I find that plaintiff has failed to establish a triable issue of fact on elements 1 (protected activity) and 4 (causation).

The first element of a *prima facie* case is that a plaintiff must have engaged in protected activity.  With regard to the Participation Clause, section 704(a) does not purport to protect all litigation activity by an employee.  Rather, the employee must have participated "in any manner in an investigation, proceeding, or hearing *under this subchapter*."  In other words, section 704(a) defines protected activity as participation in proceedings under Title VII itself.  "To establish a claim of retaliation under the Participation Clause Plaintiff must make a *prima facie* showing that Defendants discharged him because he filed a claim with the EEOC."  *Johnson*, 215 F.3d at 581.  Neither the Supreme Court nor the Sixth Circuit has ever held that the filing of an action alleging discrimination in violation of *state law* is protected activity under the Participation Clause of Title VII.  Such a construction of section 704(a) is virtually impossible, as the Participation Clause is directed only to hearings and other proceedings "under this subchapter," that is, Title VII itself.

-15-

The lawsuit that plaintiff initiated in 2003 was not brought under Title VII.  Plaintiff could have begun proceedings before the EEOC but chose not to.  He did not file an administrative charge with the EEOC, nor did he bring a Title VII action.  Plaintiff's 2003 lawsuit, although brought in the federal district court pursuant to its diversity jurisdiction, alleged two claims under the state Elliott-Larsen Act (a civil rights act similar, but not identical, to the federal civil rights acts) and one common-law tort claim.  Plaintiff cannot point to any proceeding before the EEOC or any other Title VII action that preceded defendant's promotion decision in 2006.  In *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989), the Sixth Circuit remarked that the provisions of the Participation Clause "should be read literally."  *Id.* at 1313.  Thus, when plaintiff failed to present evidence of participation in earlier "proceedings," he could not seek protection under the clause.  *Id.* The Participation Clause of section 704(a) simply does not protect an employee's assertion of rights under state law.  *See Mincey v. City of Bremerton*, 38 F. App'x 402, 406-07 (9th Cir. 2002) (State-law civil action not protected activity because "the complaint filed with the state court [did] not allege any Title VII violations."); *Learned v. City of Bellevue*, 860 F.2d 928, 932-33 (9th Cir. 1988) (filing of proceeding under state anti-discrimination law was not protected activity for purposes of Participation Clause).[1]

---

[1] In this regard, the scope of the "Opposition Clause" is somewhat broader.  An employee is protected whenever opposing a practice "made an unlawful employment practice by this subchapter," without the necessity of formally initiating a Title VII proceeding before the EEOC. In other words, the Participation Clause covers a narrower range of activities than the Opposition Clause, but it affords those activities stronger protection.  *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d at 1312 ("The distinction between employee activities protected by the participation clause and the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings."); *Laughlin v. Metropolitan Wash. Airport Auth.*, 952 F. Supp. 1129, 1133 (E..D. Va. 1997); *Croushorn v. Bd. of Trustees*, 518 F. Supp. 9, 21 (M.D. Tenn. 1980).

Even if plaintiff's filing of a lawsuit in 2003 can be deemed protected activity for purposes of the Participation Clause, the record is devoid of any evidence of causation. To establish the fourth element of a *prima facie* case of retaliation, a plaintiff must adduce evidence sufficient to support an inference that the adverse action (in this case the failure to promote in 2006) would not have been taken if the plaintiff had not engaged in protected activity. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). The existence of a causal connection does not turn on any particular factor. Nevertheless, evidence that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.*; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). Where the time period between the protected activity and the adverse action is less than two months, this may be sufficient to establish a *prima facie* case. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).

The Supreme Court has suggested that mere temporal proximity between protected activity and an adverse employment action can be sufficient evidence of causality only if the temporal proximity is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Court went on to hold that action occurring twenty months after the initiation of protected activity suggests "by itself, no causality at all." *Id.* at 274. The Sixth Circuit has recently noted a "consensus" in circuit authority that "proximity alone generally will not suffice where the adverse action occurs more than a few months" after the protected conduct. *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 629 (6th Cir. 2008). In the present case, three years elapsed between the filing of plaintiff's state-law discrimination case in 2003 and the decision not to promote him to the CSO order detailer job in 2006. Over one year elapsed between the settlement and dismissal of the previous lawsuit (April 22, 2005) and the decision at issue in the present case, which was made on

June 28, 2006.  Under Sixth Circuit law, even a three-month gap is too long to support by itself an inference of causation.  *See Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001).

The lack of temporal proximity between the protected activity and the adverse employment action raises no inference of causation in the present case.  Plaintiff is therefore required to come forward with other evidence of causation which, if accepted by the trier of fact, would support an inference that the adverse action would not have been taken if plaintiff had not engaged in protected activity.  *See Little*, 265 F.3d at 364.  No reasonable trier of fact reviewing the present record could find the existence of causation.  The only other request for the promotion or transfer made by plaintiff between the time he filed his state-law action in 2003 and denial of a promotion in June of 2006 was plaintiff's bid in October of 2004 for a transfer from the maintenance department.  Defendant granted plaintiff's bid for a transfer and awarded him the CSO storekeeper position as of November 1, 2004, while his discrimination lawsuit was still pending.  The record is devoid of any evidence of retaliatory conduct between 2003 and 2006, such as the denial of a promotion, a transfer to a less desirable job, or even an unfair employee review.  In short, plaintiff has adduced no evidence that might support an inference of causation.

In summary, plaintiff's retaliation claim under the Participation Clause of section 704(a) of Title VII fails, because plaintiff's proofs are insufficient to create a triable issue of fact in support of a *prima facie* case on either the existence of protected activity or the issue of causation.

B.    National Origin Discrimination

Plaintiff alleges that he was denied the promotion to CSO order detailer because of his national origin.  In the absence of direct evidence of such discrimination, a plaintiff is required

-18-

to establish a circumstantial *prima facie* case by raising an inference of discrimination pursuant to the familiar burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green* and its progeny. *See Abdulnour*, 502 F.3d at 501. Therefore, plaintiff must show that: (1) he is a member of a protected class; (2) he was denied a promotion; (3) he was qualified for the position; and (4) he was replaced by a person outside a protected class or was treated differently from a similarly situated, non-protected employee. *Id.* at 501. In the present case, plaintiff has met the relatively light burden of establishing a *prima facie* case under this test.

When a plaintiff establishes a *prima facie* case, the *McDonnell-Douglas* test shifts the burden of proceeding to defendant, who must articulate a legitimate, non-discriminatory reason for its action. *Abdulnour*, 502 F.3d at 502. If the defendant is successful in doing so, the burden shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Plaintiff may establish that defendant's proffered reason is mere pretext by establishing that it (1) has no basis in fact; or (2) did not actually motivate defendant's decision; or (3) was insufficient to warrant the adverse action. *Id.*

In the present case, plaintiff was deemed ineligible to bid on the CSO detailer position because he was on a leave of absence without a documented return-to-work date on the day that the bidding closed. Plaintiff was informed of this decision by Pam Brady, defendant's Senior Human Resources Representative, and Al Jackson, Vice-President of the Local Union, so both the employer and the union apparently acquiesced in this reading of article VI, § 10(e) of the collective bargaining agreement. Plaintiff has admitted that defendant communicated this decision to him contemporane-ously with the award of the position to Mike Meyers. Therefore, there can be no argument that this

justification was an afterthought.  (*See* Plf. Dep. 49).  Defendant's reliance on article VI, § 10(e) of

the collective bargaining agreement satisfies its burden to articulate a legitimate, non-discriminatory

reason for its actions.  *See Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 258 (6th Cir. 2002);

*Taylor v. United Parcel Serv.*, 237 F. App'x 34, 37 (6th Cir. 2007).

        Plaintiff may establish that defendant's reliance on the collective bargaining

agreement was "mere pretext" in one of three ways.  First, plaintiff may adduce evidence showing

that the reason had no basis in fact.  To satisfy this requirement, a plaintiff must put forth evidence

that defendant did not "honestly believe" in the reason given for its employment action.  *See*

*Braithwaite v. Timkin Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  As long as an employer has an

"honest belief in its proffered non-discriminatory reason," an employee cannot establish that the

reason was pretextual simply because it is ultimately shown to be incorrect.  *Abdulnour*, 502 F.3d

at 502.  The critical inquiry is whether the defendant made a "reasonably informed and considered

decision."  *Id.* at 503.  Plaintiff has adduced no evidence satisfying this requirement.  Plaintiff argues

only that the employer (and by inference the union) misapplied the collective bargaining agreement.

It is undisputed, however, that at the time the employer acted (June 28, 2006), neither plaintiff nor

his doctor had provided the employer with a return-to-work date.  Indeed, only a few days earlier,

plaintiff had protested strenuously when Sally Perrin had suggested a return-to-work date that

plaintiff believed was premature and insisted that he would return to work only when authorized by

his doctor.  (Def. Ex. 6).  Under the relevant provision of the collective bargaining agreement, an

employee on an extended leave of absence without a documented return-to-work date is ineligible

to bid.  Plaintiff clearly had no documented return date.  This leaves plaintiff with the argument that

he was not in fact on an extended leave of absence.  The collective bargaining agreement defines an

extended leave of absence as one that is "expected to exceed thirty calendar days." (CBA, art. VI, § 10(e)). At the time defendant acted, the only information provided by plaintiff's doctor was that plaintiff was off work until further notice (Def. Ex. 7) and that a judgment might be forthcoming at the appointment scheduled for July 6, 2006. (Def. Ex. 9). The question for this court is not whether, in the light of hindsight, plaintiff was or was not on extended leave at the time defendant acted. The only issue is whether plaintiff has adduced any evidence upon which a jury could reasonably conclude that defendants did not have an honest belief on June 28, 2006, that plaintiff's leave of absence would exceed thirty calendar days. Plaintiff has not done so.

A plaintiff can also establish that a proffered reason is a mere pretext by adducing evidence that the proffered reason did not "actually motivate" defendant's decision. To meet this burden, a plaintiff must show that it "was more likely than not" that defendant failed to promote him because of an illegal motivation. *Abdulnour*, 502 F.3d at 503. Put another way, plaintiff must show that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the company's explanation is a pretext, or cover-up." *Id.* (quoting *Manser v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Plaintiff's brief does not attempt to address this issue. Instead, plaintiff attaches numerous exhibits, which he asserts "show a pattern of harassment, job denials, retaliation, false discipline, and discrimination." (Brief, docket # 30, at 3). The voluminous exhibits attached to plaintiff's brief contain grievances and other complaints by plaintiff concerning workplace conditions spanning a decade. Conspicuously absent from this historical record is any contemporaneous complaint that plaintiff was being singled out on account of his national origin. For example, plaintiff's exhibit 35 is a grievance submitted by plaintiff in October 2005, approximately eight months before he was denied a promotion. The grievance asserts

-21-

only allegations of violation of the collective bargaining agreement.  Shortly after he was turned down for promotion, plaintiff sent a letter to Pam Brady of the Human Resources Department, who had informed him of his ineligibility to bid for the promotion.  (Letter of 7/6/06, Plf. Ex. F).  Plaintiff accused Brady and the union representative of "manipulation of contract language" and "discrimination and harassment."  The body of the letter asserts that Ms. Brady did not understand the provisions of the collective bargaining agreement.  Noticeably absent is any allegation that the decision was motivated by plaintiff's national origin.  On the same day, plaintiff sent a letter to the General Manager, Craig Bierlein, complaining that he was not "being treated fairly and according to Parker's code of ethics."  Plaintiff asked Bierlein to "stop this ongoing harassment."  Again, plaintiff did not attribute any act or omission by defendant or its employees to discrimination on account of national origin.  Plaintiff's exhibits contain no evidence that would support a jury finding that the employer's asserted justification is false and did not actually motivate the employer's decision.

Finally, a plaintiff may show that the proffered reason is mere pretext because it was insufficient to warrant the employer's action.  Plaintiff cannot possibly sustain this burden.  Plaintiff admitted that the person receiving the promotion, Michael Meyers, had more seniority than he did.  (Plf. Dep. 49).  Furthermore, Meyers had seventeen years' experience in the area, while plaintiff claimed only one and a half years' experience.  (Def. Ex. 10).  Plaintiff further admitted that if the employer believed that plaintiff's leave would exceed thirty days, article VI, § 10(e) of the collective bargaining agreement would indeed render plaintiff ineligible for the promotion.  (Plf. Dep. 59).  On the basis of this evidence, no reasonable trier of fact could conclude that defendant's decision to

-22-

award the position to a more senior, more qualified worker, rather than a worker who was arguably ineligible to even bid for the position, was unwarranted.

In summary, plaintiff's proofs do not raise a triable issue of fact that the question whether defendant's legitimate, non-discriminatory reason for its actions was a mere pretext. Defendant is therefore entitled to summary judgment on plaintiff's claim of discrimination on account of national origin.

### III.    ADA Claim

Title 1 of the Americans With Disabilities Act (ADA) provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Parker-Hannifin does not dispute that it had a sufficient number of employees to be classified as a covered entity or that it was an employer for purposes of the ADA.

A threshold question in any ADA case is whether a claimant was disabled at the time of the employer's action, within the meaning of the ADA.  *See Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).  Plaintiff bears the burden to establish that he was a qualified individual with a disability at the time of the allegedly discriminatory act.  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996); *see also McPherson v. Federal Express Corp.*, 241 F. App'x 277, 281 (6th Cir. 2007).  Under the ADA, the term "disability" is defined as "(A) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2); *see Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002); *Greaner v. Ohio*

*Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008).  "Major life activities" are "activities that are of

central importance to daily life."  *Toyota*, 534 U.S. at 197.  "The standard for qualifying as 'disabled'

is 'demanding and courts must interpret strictly the terms 'major life activities' and 'substantially

limits' . . ."  *McPherson*, 241 F. App'x at 287 (quoting *Toyota*, 534 U.S. at 197).

        Plaintiff's complaint does not identify the particular physical or mental condition

upon which he bases his ADA claim.  Although defendant's motion for summary judgment pointedly

raised the issue, plaintiff's responsive brief is likewise devoid of any discussion of the basis of his

ADA claim.  The closest that plaintiff comes to addressing the issue is the statement on page 1 of

his brief, accusing defendant of denying him an opportunity to bid on the CSO order detailer job

"because he was on Workman's compensation disability leave."  Although such conduct, if proven,

might violate state law, it falls far short of establishing the existence of a disability for purposes of

the ADA.  *See Myers v. Cuyahoga County*, 182 F. App'x 510, 516 (6th Cir. 2006) ("[I]t is

insufficient for individuals attempting to establish they are disabled under the ADA 'to merely

submit evidence of a medical diagnosis of an impairment' . . . [because] the ADA requires those

claiming the Act's protection . . . to prove a disability by offering evidence that the extent of

limitation [caused by their impairment] in terms of their own experience . . . is substantial." (quoting

*Toyota*, 534 U.S. at 198)).  As a matter of law, plaintiff's temporary incapacity during this time on

account of his carpal tunnel condition does not qualify as a disability, as there is no evidence that this

transient condition substantially limited plaintiff's ability to perform any major life activity.  *See

McKay v. Toyota Mfg., U.S.A., Inc.*, 110 F.3d 369, 372-73 (6th Cir. 1997) (carpal tunnel syndrome,

which only affected plaintiff's ability to perform a narrow range of assembly line jobs, was not an

impairment that substantially limited her general ability to work); *see also Gerton v. Verizon South,*

-24-

*Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005) (affirming district court's grant of summary judgment in favor of defendant where plaintiff failed to submit evidence showing that her wrist condition impeded her ability to perform other jobs). After plaintiff's short medical leave for carpal tunnel surgery in June 2006, he immediately returned to his CSO storekeeper job without incident. (Plf. Dep., 28). No evidence suggests that defendant's decision to award the promotion to Meyers was affected in any way by plaintiff's carpal tunnel syndrome or by the employer's perception that he could not physically perform the job that he was seeking. Plaintiff's ADA claim therefore fails for lack of proof of a disability.

### **Recommended Disposition**

For the foregoing reasons, I recommend that defendant's motion for summary judgment (docket # 28) be granted and that summary judgment be entered in favor of defendant and against plaintiff on all claims in plaintiff's complaint, as amended.


Dated:   June 27, 2008                    /s/  Joseph G. Scoville
                                          United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).